Dave Anthony DRAX, Petitioner,

v.

John ASHCROFT, as Attorney General of the United States; James Ziglar, as Commissioner of the Immigration and Naturalization Service; Edward McElroy, District Director, Immigration and Naturalization Service, New York District; and the Immigration and Naturalization Service, Respondents.

No. 99 CV 3613(JBW).

United States District Court, E.D. New York.

Nov. 14, 2001.

The Legal Aid Society, New York City, By Janet Sabel, Esq., Maria E. Navarro, Esq., Bryan Lonegan, Esq., Ariadna Renteria Torres, Esq., for Petitioner.

Alan Vinegrad, United States Attorney, Eastern District of New York, Brooklyn, NY, By Scott Dunn, Esq., for Respondents.

### MEMORANDUM ORDER, AND JUDGMENT AFTER REHEARING

WEINSTEIN, Senior District Judge.

*Table of Contents*:

I. Introduction .............................................. 298
II. Facts .................................................... 299
III. Law ..................................................... 300
 A. Exclusion and Deportation ............................ 300
 B. Discretionary Relief under section 212(c) ............ 301
 C. Adjustment of Status ................................. 303
 D. The *Gabryelsky* System .............................. 304
 E. Exhaustion of Administrative Remedies ................ 305
 F. Immediately Available Visa ........................... 305
IV. Application of Law to Facts ............................. 306
 A. Failure to Exhaust Administrative Remedies ........... 306
 B. Availability of *Gabryelsky* Relief .................. 306
 C. Retroactivity ....................................... 307
V. Conclusion ............................................... 308

## I. Introduction

An immigrant ordered deported as an aggravated felon seeks a writ of habeas corpus. He has two convictions, one for attempted possession of a firearm and one for a drug sale, which would bar relief. He requests concurrent hearings to resolve both claims. *See Matter of Gabryelsky,* 20 I. & N. Dec. 750, 1993 WL 495142 (B.I.A.1993) (allowing concurrent hearings in these cases).

In its Memorandum and Order dated October 3, 2001, the court found that petitioner was qualified for *Gabryelsky* relief. See *Drax v. Reno,* 2001 WL 1180678 ("*Drax I*"). After *Drax I,* new evidence was produced by the respondent that had not been provided earlier because of the September 11 disruptions to petitioner's files which led to cancellation of a hearing. Based on this new information, petitioner's *Gabryelsky* claim fails because he appar-

ently does not meet the requirement of an immediately available visa. *Drax I* also noted that petitioner's deportability from his weapons conviction was based on retroactive application of the statute. That issue was not resolved since it was not then necessary for determination of the case. The petition now succeeds on these constitutional grounds.

The case presents three questions:

(1) May petitioner prosecute this claim in District Court;

(2) Does the petitioner qualify for Gabryelsky relief under both 212(c) and 245; and

(3) Is petitioner qualified for a section 212(c) hearing since his weapon (and drug) conviction predated the legislation making the weapons crime a deportable offense?

The answer to the first and third questions is "yes."

## II. Facts

Dave Anthony Drax entered the United States twenty-five years ago at age fifteen. He was granted the status of a lawful permanent resident seventeen years ago in 1984.

Mr. Drax pled guilty in a New York state court to attempted criminal possession of a firearm in the second degree in May 1993. He pled guilty to sale of a controlled substance in the fifth degree in April 1996. Later in April of 1996, Mr. Drax was simultaneously sentenced to one-to-three years for the weapons charge and two-to-four years for the drug charge, sentences to run concurrently.

While Mr. Drax was still incarcerated, the Immigration and Naturalization Service (I.N.S.) commenced deportation proceedings by filing an Order to Show Cause in January of 1997. In July of 1997, Mr. Drax admitted his convictions in a hearing before an immigration judge. He was ordered deported. Upon his release from prison in June of 1998, Mr. Drax was taken into I.N.S. custody.

Mr. Drax was not represented by counsel at the hearing, though he had been granted two adjournments, totaling over four months, to find an attorney. At the immigration hearing, Mr. Drax asked if he was "qualified for any type of waiver."

"That's what we're going into the pleadings for," replied the administrative Judge. After verifying Mr. Drax's convictions, the Judge replied that "there is no relief available to you."

Not surprisingly, given his pro se appearance, Mr. Drax did not specifically request a hearing under section 212(c) or the *Gabryelsky* method of obtaining a concurrent hearing under both sections 245 and 212(c). He appealed in time from the order of deportation in July 1997.

While the appeal was pending, Mr. Drax, as the son of a naturalized citizen, filed an I–130 form as a prerequisite for applying for adjustment of status. This application was received by the I.N.S. and was noted as received in October 1998.

On May 28, 1999 the Board of Immigration Appeals dismissed Mr. Drax's appeal. *In Re Drax*, B.I.A. Decision, File # A38736811. In a one-page opinion, the court declined to hear oral argument, and held that Mr. Drax's request for 212(c) relief was barred by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Id.* The court declined to address any constitutional arguments. *Id.*

On June 24, 1999, Mr. Drax filed a petition for a writ of habeas corpus in this court seeking review of the deportation order against him. That petition was stayed by joint consent of the parties while closely relevant cases were being decided on appeal.

In April 2000, Mr. Drax married a United States citizen. On May 15, 2000, the I.N.S. received a visa application for Mr. Drax, as an immediate relative, from his new wife. This application was then substituted for Mr. Drax's previously filed I–130 which had been based on the father's citizenship. The priority date of this new application was May 11, 2000; notice of approval of this application was sent to Mr. Drax on March 27, 2001. *See* Petitioner's Letter, Sept. 4, 2001, Exhibit C.

## III. Law

### A. Exclusion and Deportation

Prior to 1996, the INA provided for two separate types of proceeding to remove aliens from the country, exclusion and deportation. One difference was in the types of subject aliens. Those physically present in the United States who committed certain acts were subject to deportation. In contrast, those at the country's border were subject to exclusion. Exclusion also applied to some aliens who were physically present in the United States but who were treated legally as if they were at the border—for example, if they had been "paroled" into the country rather than "admitted." *See Henderson v. Immigration and Naturalization Service,* 157 F.3d 106, 111 n. 5 (2d Cir.1998) (explaining distinction between exclusion and deportation).

In 1996, exclusion and deportation were consolidated into a single process called "removal." *Id.* Exclusion had been governed by section 212 and deportation by section 241. Despite the consolidation, sections 212 and 241 remain separate even today and each has its own particular list of grounds for removal (these being the former lists of the separate grounds for exclusion or deportation).

Section 212 covers excludable aliens. The pre–1996 version of section 212(a) reads: "[e]xcept as otherwise provided for in this Act, the following describes classes of excludable aliens who are ineligible to receive visas and shall be excluded from admission to the United States." Section 212(a) then lists several categories of excludable aliens. Section 212(a)(2)(A)(i) is the provision excluding drug offenders, and section 212(a)(2)(C) excludes drug traffickers.

Section 241 governs deportation of aliens already present. Section 241(a)(2)(A) provides in relevant part that: "Any alien who is convicted of an aggravated felony at any time after entry is deportable." "Aggravated felony" is a term defined in section 101(a)(43), which includes drug crimes. Section 241(a)(2)(B)(i) also allows deportation of aliens convicted of drug crimes.

Most importantly, section 241(a)(2)(C) makes deportable "any alien who at any time after entry is convicted under any law of purchasing, selling, offering for sale, using, owning, possessing, or carrying, or attempting or conspiring to purchase, sell, offer for sale, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device." This provision allowing for deportation based on firearms offenses was amended in 1994 to include "attempts" to violate firearms law. *See* section 203(b) of the Immigration and Naturalization Technical Corrections Act of 1994, Pub.L. No. 103–416, 108 Stat. 4305, 4311 ("1994 Act"). (Recall that petitioner pleaded guilty to the attempted possession of a firearm in May of 1993.) Prior to 1994, the language "or attempting to" possess a firearm was not part of the statute. The BIA held that this change affected convictions for attempts even if the plea was taken prior to the amendment. *See In Re Clint Saint John,* 21 I. & N. Dec. 593, 1996 WL 541374 (B.I.A.1996).

Although *Saint John* was not mentioned in the recent Supreme Court decision *I.N.S. v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), *Saint John* is now of dubious authority. *St. Cyr* presents a strong general position against retroactive changes in substantive rights. *See St. Cyr*, 121 S.Ct. at 2290–91 (a statute is retroactive where it "takes away or impairs vested rights"). This is discussed in greater depth in Part IV.C, *infra*.

B. Discretionary Relief under section 212(c)

Between 1952 and 1996, the INA contained section 212(c), a provision granting the Attorney General broad discretion to admit otherwise excludable aliens. It stated:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.

Section 212(c) on its face applies only to aliens who have temporarily traveled abroad, and are returning to an unrelinquished domicile of seven consecutive years. Nonetheless, the court of appeals for the Second Circuit held that a section 212(c) waiver was available regardless of whether the alien had departed from the country subsequent to the acts which rendered him deportable, *Francis v. I.N.S.*, 532 F.2d 268, 273 (2d Cir.1976), and the BIA then adopted this approach in applying section 212(c) in all cases nationwide. *See Matter of Silva*, 16 I. & N. Dec. 26, 1976 WL 32326 (BIA 1976). *Cf. St. Cyr*, 121 S.Ct. at 2276 (recounting this history and endorsing the *Francis* interpretation).

Some 10,000 applicants—over half of immigrants applying for a section 212(c) waiver—were granted this relief between 1989 and 1995. *See St Cyr.*, 121 S.Ct. at 2277 n. 5. The factors considered in deciding whether or not to grant relief in a section 212(c) hearing are numerous; they are listed in *Lovell v. I.N.S.*, 52 F.3d 458 (2d Cir.1995):

When considering a § 212(c) application, an immigration judge must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of 212(c) relief appears in the best interests of this country. [ ]. Adverse factors include: the nature and circumstances of the exclusion ground at issue, the presence of additional immigration law violations, the existence of a criminal record and its nature, recency and seriousness, and the presence of other evidence indicative of an alien's bad character or undesirability as a permanent resident. [ ]. Favorable considerations include: family ties within this country, residence of long duration within this country, evidence of hardship to the alien and alien's family upon deportation, Armed Forces service, employment history, community service, property or business ties, evidence attesting to good character, and, in the case of one convicted of criminal conduct, evidence of genuine rehabilitation. *Lovell* at 461.

Post-*Francis*, section 212(c) relief has also been available to both deportable and excludable aliens. Aliens may not use section 212(c) to waive all section 241 offenses, however, because "there are some acts or offenses that are grounds for deportation under section 241 which are not grounds for exclusion under section 212, and vice versa." *Cato v. I.N.S.*, 84 F.3d 597, 599 (2d Cir.1996).

■ Section 212(c) may be used to waive offenses which create section 241 deportation grounds only if these are mirrored in the list of exclusion grounds under section 212(a). For example, section 212(c) may be used to waive a drug offense giving rise to section 241 deportability, since this offense is also listed as a ground for exclusion in section 212(a). Deportable offenses not included in section 212(a), including firearms charges, may not be waived by application of section 212(c). *Cato*, 84 F.3d at 600 (finding that section 241 firearms offenses are not waivable under section 212(c) since they are not among the enumerated offenses within section 212(a)). The general rule is subject to one court-created exception: Aliens deportable under parts of section 241 which "could have no conceivable analogue in the exclusion setting" are also eligible for section 212(c) relief. *See Bedoya–Valencia v. I.N.S.*, 6 F.3d 891 (2d Cir.1993).

This confusing interplay of laws was most clearly explained in *Cato* which found aliens convicted of a firearms violation ineligible for section 212(c) relief. *Cato* held that, where an alien deportable under section 241 applies for section 212(c) relief, he can be placed in one of three categories. First are applicants deportable for section 241 offenses which are identical to some ground for exclusion listed in section 212(a). Aliens in this group are eligible for section 212(c) relief. Second are applicants whose section 241 grounds for deportation have no conceivable analogue in the exclusion context; these aliens are also eligible for section 212(c) relief.

The third group includes applicants whose grounds for deportation could have been included in the list of excludable offenses in section 212(a), but were not.· This includes aliens convicted of firearms offenses, which are a listed ground for deportation under section 241, but are not

an enumerated ground for exclusion in section 212(a). Section 212(c) relief is not available for this class. *See Cato*, 84 F.3d at 600. The reasoning of the *Cato* court is that Congress chose to make these aliens ineligible for section 212(c) relief. *Id.* Arguably, this conclusion is strained since Congress is unlikely to have anticipated *Francis* and *Bedoya–Valencia* which extended section 212(c) to two of the three possible categories of deportable aliens. In sum, section 212(c) is extended to nearly all deportable aliens, leaving out only a small subgroup whose firearms offenses might have been included in section 212(a)'s list of exclusion offenses, but were not. *Id.*

Prior to April 1996, section 212(c) waivers were allowed for all aliens excludable under section 212 (and those deportable under relevant sections of section 241 as established in *Francis* and *Cato* ), except for those who had committed a crime then characterized as an "aggravated felony" and which resulted in a sentence of five or more years. *See* Imm. Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978, 5052 (1990), section 511(a), as amended by the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. No. 102–232, 105 Stat. 1733, 1751 (1991), section 306(a)(10). This policy changed dramatically when section 212(c) was amended in 1996 by section 440(d) of AEDPA. *See Mojica v. Reno*, 970 F.Supp. 130, 137 (E.D.N.Y.1997) (history of AEDPA and section 212(c)). After AEDPA, a large number· of aliens became newly ineligible for section 212(c) relief, including those convicted of an aggravated felony, a drug offense, certain weapons or national security violations, or multiple convictions involving crimes of moral turpitude. *Id.* This modified version of section 212(c) was short-lived; section 212(c) was eliminated entirely by the Illegal Immigration Reform and Immigrant Responsibility Act (IIRI-

RA), which was passed later in 1996. *See id.* at 136–37; *St. Cyr*, 121 S.Ct. at 2276–78 (providing history of AEDPA and IIRI-RA); Peter H. Schuck, Citizens, Strangers, and In–Betweens: Essays on Immigration and Citizenship 14–15 (1998) (same).

AEDPA's modification of section 212(c) was designed to apply retroactively to convictions. *See* 110 Stat. 1277; *St. Cyr*, 121 S.Ct. at 2277. The Supreme Court found this retroactive application invalid in *St. Cyr*. It held that, "section 212(c) relief is available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for section 212(c) relief at the time of their plea under the law then in effect." *St. Cyr*, 121 S.Ct. at 2293; see also *Mojica*, 970 F.Supp. at 173–77. The Court's reasoned that "Plea agreements involve a *quid pro quo* between a criminal defendant and the government.... Relying upon settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose section 212(c) relief, a great number of [similarly situated defendants] chose to plead guilty." *St. Cyr*, 121 S.Ct. at 2291–92.

### C. Adjustment of Status

The INA provides that aliens who meet certain requirements may be issued immigrant visas. For immigrants living abroad, visas are issued at consulates. For admissible aliens already residing in the United States, the procedure is called adjustment of status. Adjustment of status is governed by INA section 245. Subsection 245(a) sets out the general statutory scheme:

> The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, and (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) *an immigrant visa is immediately available to him at the time his application is filed.* (Emphasis added.)

This subsection was not modified between 1976 and 2000. Prior to 1976, the requirement was that "... (3) an immigrant visa is immediately available to him at the time his application is *approved.*" (Emphasis added.) The 1976 change made availability of the visa at the time of filing, rather than approval, a critical date.

Section 245 adjustment of status was designed to be used by nonimmigrants applying for adjustment to permanent resident status; the title of the section is "Adjustment of status of nonimmigrant to that of person admitted for permanent residence." Nevertheless, the provision has been interpreted to apply to aliens who are already permanent residents, allowing them to "adjust" their status to that of an alien without the firearms or other offense which would otherwise render them deportable. *See Matter of Rainford*, 20 I. & N. Dec. 598, 1992 WL 323809 (B.I.A.1992). *Rainford* held that "a [firearms] conviction does not preclude a finding of admissibility in connection with an application for adjustment of status under Section 245(a) of the Act, and it may not serve as a ground of deportability if the respondent's status is adjusted to that of a lawful permanent resident." *Id.* at 598. Thus, even an alien convicted of a weapons offense is "admissible to the United States and therefore eligible to apply for adjustment of status." *Id.* at 602. *Rainford* also laid out conditions for this remedy, including the exer-

cise of discretion for reasons of compassion, and the availability of a current visa number for the appropriate classification (in that case first-preference). It reads:

> We note that to be granted adjustment of status, the visa petition on his behalf will have to be approved by the Service. The respondent will also have to show the' immigration judge that he merits adjustment in the exercise of discretion. Finally, visa numbers for first-preference classification will still need to be current. *Id.* at 602.

*Rainford* has been followed by the BIA. *See, e.g.,* In Re Rosas–Ramirez, 1999 WL 187054; *In Re Ayala–Arevalo,* 1998 WL 833810; *In re Collado–Munoz,* 21 I. & N. Dec. 1061, 1997 WL 805604 (1998); *In re Gonzalez–Camarillo,* 21 I. & N. Dec. 937, 1997 WL 362671; *Gabryelsky,* supra; *Matter of K–L–,* 20 I. & N. Dec. 654, 1993 WL 233118. It has been approved by the courts. *See Snajder v. I.N.S.,* 29 F.3d 1203 (7th Cir.1994); *Powell v. Jennifer,* 937 F.Supp. 1245 (E.D.Mich.1996); *Calderon v. Reno,* 39 F.Supp.2d 943 (N.D.Ill. 1998). The court of appeals for the Second Circuit has applied the same rule since a case predating *Rainford. See Tibke v. I.N.S.,* 335 F.2d 42 (2d Cir.1964); *see also Powell,* 937 F.Supp. at 1248 n. 3 (noting this application of section 245 under *Tibke* ).

■ Section 245 adjustment of status may not be used if the applicant has a drug conviction. Aliens with drug convictions are not considered "admissible" for section 245 purposes. For most non-drug offenders, only crimes with a sentence imposed of more than five years will force exclusion. There are three categories of aliens ineligible for *Rainford* relief. These excludable aliens are (1) aliens with sentences of over 5 years, (2) aliens with drug convictions, and (3) certain other miscellaneous groups. *See generally St. Cyr* at 2276 (laying out categories of aliens excludable under section 212(a)).

In short, section 212(c) may be used to waive exclusion for the offenses listed in section 212(a), including drug offenses; however, section 212(c) relief is barred where the applicant has a firearms conviction. Section 245 may be used to adjust the status of a lawful permanent resident, removing certain offenses from their record for purposes of immigration hearings, including firearms offenses; however, section 245 may not be used where the applicant has a record of drug offenses.

### D. The *Gabryelsky* System

*Gabryelsky* allows the petitioner to consolidate both the 212(c) and 245 discretionary hearings into a single hearing. This creates the assumption that the two hearings happen at the same moment. Because of this simultaneous determination, the immigration judge can consider the section 212(c) hearing as not barred by the weapons conviction, since the judge is at that exact moment deciding also whether to waive the weapons conviction. And he can consider the section 245 hearing as not barred by the drug conviction, since he is also concurrently determining whether to waive the drug charge. Only if the judge decides to waive both charges is the petitioner not deported.

The *Gabryelsky* decision was based largely on the then-current Code of Federal Regulations. Section 245.1(f) of title 8 in the 1995 Code of Federal Regulations (the latest version prior to 1996 AEDPA changes) laid out the procedure for "Concurrent applications to Overcome Exclusionary Grounds." This section provided in relevant part that "[a]ny applicant for adjustment under this part [section 245] may also apply for the benefits of section 212(c) of the Act."

The *Gabryelsky* method has been adopted by the BIA, and endorsed by the courts. *See Snajder v. I.N.S.*, 29 F.3d 1203 (7th Cir.1994); *Nunez v. I.N.S.*, 50 F.3d 1 (1st Cir.1995) (table, text in WEST-LAW 94–1906); *Calderon v. Reno*, 39 F.Supp.2d 943 (N.D.Ill.1998); *Rivera–Saavedra v. Demore*, 2001 WL 1006819 (N.D.Cal.2001); *Ramos–Flores v. I.N.S.*, 1999 WL 1788910 (D.Mass.1999); *Cinquemani v. Ashcroft*, 2001 WL 939664 (E.D.N.Y.2001), *see also In Re Rodarte-Espinoza*, 21 I. & N. Dec. 150, 1995 WL 788984 (B.I.A.1995) (applying *Gabryelsky* ). But cf. *Powell v. Jennifer*, 937 F.Supp. 1245 (E.D.Mich.1996) (rejecting *Gabryelsky* after a thorough analysis).

### E. Exhaustion of Administrative Remedies

■ Courts are barred from hearing immigration claims not raised at the administrative level. See *Correa v. Thornburgh*, 901 F.2d 1166, 1171 (2d Cir.1990) ("This claim was never raised by Correa either before the Immigration Judge or on appeal to the BIA. The District Court in this habeas corpus proceeding apparently considered the issue de novo, thereby according Correa a benefit to which she was not entitled .... This claim should have been dismissed for failure to exhaust administrative remedies."). *See also Cinquemani*, 2001 WL 939664 at n. 4 (same in context of a *Gabryelsky* claim). *But cf. Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir.2001) (allowing relief despite failure to exhaust, where higher burden of "cause and prejudice" was shown).

The INA itself requires exhaustion. It states:

Section 106a(c). Exhaustion of administrative remedies or Departure from the United States; Disclosure of Prior Judicial Proceedings. An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations or if he has departed from the United States after the issuance of the order.

The court of appeals for this circuit has an established tradition of leniency towards pro se petitioners, especially where summary judgment is sought by the government. *See Williams v. Kullman*, 722 F.2d 1048 (2d Cir.1983) ("due to the *pro se* petitioner's general lack of expertise, courts should review habeas petitions with a lenient eye, allowing borderline cases to proceed .... *pro se* complaints must be liberally constructed"); *see also United States v. Gonzalez–Roque*, 165 F.Supp.2d 577 (S.D.N.Y.2001) (holding that pro se petitioners need not raise issues "in INS terms" but may raise them "as they may have understood" them).

### F. Immediately Available Visa

The *Gabryelsky* scheme requires that the applicant meet the timing requirements of section 245 laid out earlier, that "an immigrant visa is immediately available to [the alien] *at the time his application [for adjustment of status] is filed.*" (Emphasis added). An appropriate construction is that the visa must be available only when the application is filed. The cases suggest that the filing of the I–130 petition, which is a prerequisite for requesting section 245 relief, is sufficient, even if the application for the visa occurs during pendency of the later proceedings such as *Gabryelsky* proceedings. *See, e.g., Rainford* at 602 (allowing section 245 relief where the I–130 petition had been filed); *cf. Cinquemani*, 2001 WL 939664 at *4 (stating that *Gabryelsky* petition would fail because petitioner's wife had not yet "filed an Immediate Relative Petition"). *But cf. Burger v. McElroy*, 1999 WL 787661 at *1

(S.D.N.Y.) (stating that "approval of the petition makes an immigrant visa immediately available"). Statutory language also supports the position that the application for section 245 relief based upon a filed petition for a visa may be made while the proceeding is pending. As already noted, the original text of section 245(a) required an "approved" petition for section 245 relief, a requirement which was changed specifically, when the statute was amended in 1976, to require only a "filed" petition. This conclusion also comports with section 245.1(g) of title 8 of the then-current Code of Federal Regulations, which read in relevant part, "[a]n alien is ineligible for the benefits of section 245 of the Act unless an immigrant visa is immediately available to him or her at the time the application is *filed.*" (emphasis added).

## IV. Application of Law to Facts

### A. Failure to Exhaust Administrative Remedies

■ Exhaustion doctrine does not bar a remedy for petitioner. At his hearing, the pro se petitioner asked the judge if he was "qualified for any type of waiver." Keeping in mind the stricture to "review habeas petitions with a lenient eye," the reasonable conclusion is that the petitioner in effect requested both *Gabryelsky* relief and a 212(c) hearing by asking for "any type of waiver." *See United States v. Gonzalez–Roque,* 165 F.Supp.2d 577, 584 (S.D.N.Y.2001) ("Under the circumstances here, the appeal constituted an exhaustion despite Gonzalez–Roque's failure to explicitly raise the adjustment issue in INS terms. Acting *pro se,* he sought to raise the issue as he might have understood it."). Therefore, the petitioner's claim is not barred for failure to exhaust administrative remedies.

### B. Availability of *Gabryelsky* Relief

■ Petitioner is entitled to use section 212(c) since his drug conviction predates the changes to that section. *St. Cyr,* 121 S.Ct. at 2293. Since *Gabryelsky* was established BIA practice at the time of his immigration hearing, petitioner is entitled to *Gabryelsky* relief if he qualifies under both sections 212(c) and 245. A hard question is what timing requirements petitioner must meet in order to satisfy *Gabryelsky.* To be eligible for section 245 relief, a visa "must be immediately available" to the alien.

In *Drax I,* this court found petitioner eligible for *Gabryelsky.* The court held that "immediately available" meant filing of a petition, and that the proper date for this filing was by the time of a BIA appeal. *See Drax I* at *12. Petitioner succeeded under *Gabryelsky* because the court believed he would have easily met the *Gabryelsky* requirement of an immediately available visa. In arriving at this conclusion, the court relied on the most recent Visa Bulletin available at the United States State Department web site, which was the January 1996 bulletin. *See id.* at *9. This bulletin showed that petitioner's preference category was then "current." *Id.*

The government has since provided the court with more up-to-date information showing that, at the time of petitioner's immigration hearing in 1997, his first-preference category was actually subject to approximately a one-year wait period. This undermines the reasoning of *Drax I.* Many of the assumptions underlying that decision are now incorrect, including the idea that "[p]resumably, had the immigration judge told Mr. Drax of the requirement that an I–130 be filed, Mr. Drax might have filled out the application then or asked for a short continuance to do so." *Id.* at *12.

The new information provided by the government makes Mr. Drax's eligibility for *Gabryelsky* dubious. He could only have become *Gabryelsky* eligible if his father had immediately filed an I–130, and then petitioner had managed—through continuances, an extended 212(c) hearing, or other administrative delay—to postpone resolution of his section 245 application. This seems like a rather remote possibility. The administrative judge's statement that "you are not eligible for any kind of relief" was not a misstatement given that Mr. Drax was not prima facie eligible for *Gabryelsky* as earlier believed. Petitioner's *Gabryelsky* claim seems simply too attenuated for it to be the basis for a successful habeas corpus petition.

In October of 1998 when the I.N.S. noted that petitioner's visa application based on his father's citizenship was "received," visa applications for first-preference family members (unmarried sons or daughters of United States citizens) had a wait list of over a year. Petitions with that date were not processed until February 2000. Since the Board of Immigration Appeals determined petitioner's appeal on May 28, 1999, a visa was not available to petitioner at any time before his case was closed (however "filed" is construed). It is not clear that any earlier filing by his father after petitioner had been misinformed of his rights by the hearing officer would have led to a visa before the Board of Immigration Appeals decided the appeal.

C. Retroactivity

As noted earlier, at the time of Mr. Drax's 1993 conviction for attempted possession of a weapon, attempted possession of a weapon was not a deportable crime under section 241. Deportation was limited to aliens who actually possessed or used firearms. It was not until the 1994 Act's "technical amendment" to the statute that the ban was extended to include persons convicted of attempted firearms offenses. The BIA subsequently held that this change in law would apply retroactively to aliens whose convictions predated the 1994 Act. *Saint John* at *3. This retroactive application is troublesome. In *Drax I*, the court noted that "[t]his independent ground certainly seems to favor the petitioner. But it is not necessary to resolve this constitutional issue because petitioner succeeds on other grounds." *Drax I* at *10. Since petitioner's *Gabryelsky* claim now seems dubious, it is now desirable to resolve the retroactivity issue.

The BIA decision in *Saint John* relies on the fact that the 1994 Act was technical in nature. *Saint John* at *3. Since the Act was technical, the BIA held, it was not subject to examination for retroactivity problems. This decision must be reevaluated in light of the Supreme Court decision in *St. Cyr*.

*St. Cyr* creates a two-part test for determining whether statutes may be applied retroactively. First, a statute must be examined to determine whether or not it operates retroactively. This turns on whether the statute "attaches new legal consequences to events completed before its enactment." *St. Cyr* at 2290 (citing *Martin v. Hadix*, 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347). "A statute has retroactive effect when it takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *St. Cyr* at 2290 (internal citations omitted).

The 1994 Act seems to fall squarely within the category of retroactive statutes. By adding "attempt" to the list of deportable offenses, it substantially increased the number of crimes for which aliens could be deported. This change

impacted petitioner and "[took] away ... vested rights." The right to a 212(c) hearing is a vested right. *St. Cyr* at 2293. The statute also created a major shift in the law. Prior to 1994, only actual possession or use of firearms subjected aliens to deportation. After the Act, the inchoate crime of attempt was added to the list. The 1994 Act should be viewed as substantive, not technical, for retroactivity purposes.

 *St. Cyr*'s second prong is to determine whether this retroactive effect was the result of a "clear intent" of the legislature. "Congress has the power to enact laws with retroactive effect." *St. Cyr* at 2288. This power is especially great in the immigration context, since Congress's power to regulate aliens is extensive. *Fiallo v. Bell*, 430 U.S. 787, 794, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). Courts are cautious in finding retroactivity since such a decision—as in the instant case—often has harsh consequences. This is why a clear statement of congressional intent is needed. *St. Cyr* declares:

> A statute may not be applied retroactively ... absent a clear indication from Congress that it intended such a result. Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits.... The standard for finding such unambiguous direction is a demanding one. Cases where this Court has found truly retroactive effect adequately authorized by statute have involved statutory language so clear it could sustain only one interpretation. *St. Cyr* at 2288.

This clarity is particularly important where rights of legal permanent resident aliens are affected, since permanent residents are entitled to a standard of due process higher than that accorded other aliens. *Landon v. Plasencia*, 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982).

Congress did not adopt the kind of clear statement required for retroactive application of the law on attempts. The statute does contain language that it applies to convictions "before, on, or after" its enactment. *See* section 203(c) of the 1994 Act; *see also Saint John* at *3. This statement must be weighed against the statute's title that it is a mere "technical amendment." Technical amendments are by nature nonsubstantive. *St. Cyr* requires recognition by the legislature that it is changing vested rights, before courts will allow a statute to apply retroactively. Titling an amendment "technical" is some evidence that the legislature had not planned to destroy vested rights. The Act's innocuous title raises a doubt that "Congress itself has affirmatively considered the potential unfairness of retroactive application" of the new law.

The statute should not be applied retroactively, to aliens such as petitioner whose convictions (for attempted weapons offenses) predate the law. This means that petitioner is not deportable because of his weapons conviction, and since he is not deportable because of this weapons conviction, he is also not barred from applying for 212(c) relief for his drug conviction.

## V. Conclusion

Petitioner is entitled to attempt to convince an immigration judge that he is qualified for a discretionary waiver.

The writ is granted.

SO ORDERED